FILED

JUL 1 5 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re: | Case No. 09-41350-B-13 |
| MARILYN JAVIER, | |
| Debtor(s). | Adversary No. 10-2044-B ✓ |
| MARILYN JAVIER, | DCN N/A |
| Plaintiff(s), | |
| vs. | Date:  November 18, 2010 |
| | Time:  11:30 a.m. |
| MORTGAGE ELECTRONIC SYSTEM, INC., et al., | Place:  U.S. Courthouse |
| | Courtroom 32 |
| Defendant(s). | 501 I Street |
| | Sacramento, CA 95814 |

**MEMORANDUM DECISION ON MOTION FOR JUDGMENT ON THE PLEADINGS**

This matter came on for final hearing on November 18, 2011, at 11:30 a.m.  Appearances are noted on the record.  At the conclusion of the hearing the court took the matter under submission.  The following constitutes the court's findings of fact and conclusions of law, pursuant to Federal Rule of Bankruptcy Procedure 7052.

**DECISION**

The motion is granted in part and denied in part to the extent set forth herein.  The motion's request for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is denied as to all claims for relief.  The motion's requests, pursuant to Fed. R. Civ. P. 12(h)(2) and (b)(6), for dismissal of the first, second, fourth and fifth claims for relief contained in the first

-1-

amended complaint filed on June 30, 2010 (Dkt. 34)(the "FAC"),
are granted as to moving defendants Mortgage Electronic System,
Inc. ("MERS"), IMB HoldCo, LLC ("IMB HoldCo"), IMB Management
Holdings, LLP  ("IMB Management"), OneWest Bank Group, LLC
("OneWest Group") and OneWest Venture, LLC ("OneWest Venture"),
and those claims are dismissed as to defendants MERS, IMB HoldCo,
IMB Management, OneWest Group and OneWest Venture without leave
to amend.  The motion's requests, pursuant to Fed. R. Civ. P.
12(h)(2) and (b)(6), for dismissal of the first, second, fourth
and fifth claims for relief as to moving defendant OneWest Bank,
FSB ("OneWest Bank") are granted as to defendant OneWest Bank
with leave to amend.  The motion's request for dismissal of the
third claim for relief as to defendants MERS, IMB HoldCo, IMB
Management, OneWest Group, OneWest Venture and OneWest Bank
(collectively, the "Moving Defendants") is granted as to Moving
Defendants without leave to amend.  On or before August 12, 2011
the plaintiffs shall file a second amended complaint that is
consistent with this ruling.  If the plaintiffs wish to include
in the complaint claims for relief against any or all of MERS,
IMBHoldCo, IMB Management, OneWest Group and OneWest Venture, the
plaintiffs shall file a motion requesting permission to include
those defendants in the second amended complaint, shall file and
serve said motion on or before August 5, 2011, and shall set said
motion on the first available calendar which provides proper
notice to parties in interest.  If filed, the motion to amend
shall set forth the specific factual allegations which the

plaintiffs would include in the second amended complaint as to

those parties which the plaintiffs seek to include as named

defendants.  If filed, the motion to amend will also toll the

August 12, 2011 deadline for filing the second amended complaint

set forth above pending the resolution of the hearing on the

motion to amend.

### FACTUAL BACKGROUND

By this motion, Moving Defendants move for judgment on the

pleadings under Fed. R. Civ. P. 12(c), made applicable to this

adversary proceeding by Fed. R. Bankr. P. 7012.

The FAC alleges five causes of action for 1.) Declaratory

Relief, 2.) Violation of 11 U.S.C. § 362(a), 3.) Violation of 11

U.S.C. § 362(k)(1), 4.) Violation of the Real Estate Settlement

Procedures Act ("RESPA"), and 5.) Civil Conspiracy.

The FAC grounds its claims for relief on the following

alleged facts.  The plaintiff debtor Marilyn Javier (the

"Debtor") owns real property located at 9836 Mountain Vista

Circle, Elk Grove, California (the "Property").  The Property is

the Debtor's personal residence.  On or about September 14, 2006,

the Debtor executed a promissory note (the "Note") payable to the

order of "INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS

BANK" for the purpose of obtaining a loan.  The Debtor executed a

deed of trust (the "Deed of Trust") encumbering the Property to

secure the Note.  The terms of the Note required monthly payments

of $1,497.86 over forty years.  The Debtor alleges that the Note

and Deed of Trust "did not include an escrow account."  FAC, ¶

-3-

30.

IndyMac Bank was subsequently closed by the Federal Deposit Insurance Corporation and a new entity, OneWest Bank was formed to which the assets of IndyMac, including the Note and Deed of Trust, were transferred.  The Note and Deed of Trust, along with other assets of IndyMac were first allegedly "passed through" IMB HoldCo, IMB Management, OneWest Venture and OneWest Group to OneWest Bank.

The Debtor commenced this chapter 13 bankruptcy case (the "Bankruptcy Case") on October 11, 2009.  OneWest Bank filed a secured claim (the "Claim") in the Bankruptcy Case on November 25, 2009.  The Claim is filed in the amount of $587,773.23.

The Debtor alleges that "Defendant, as a matter of normal business practice, conducts an 'Escrow Analysis' pursuant to RESPA upon notice of a bankruptcy filing."  FAC, ¶ 47.  An escrow analysis allegedly analyzes the advances made by the lender in the twelve months prior to the bankruptcy filing for the purposes of paying of property taxes, insurance and other costs related to the security for a loan and projects those costs into the future in order to determine the amount that the borrower will be required to pay for those costs in the future.  The escrow analysis also allegedly compares the amounts advanced by the lender for these costs to the amounts paid into an escrow account by the borrower for payment of those costs; if the result shows that the lender has advanced funds in excess of what the borrower has paid into the escrow account, the lender will generate a

notice of a post-petition increase in the regular monthly
mortgage payment.  The increase is allegedly intended to recoup
the advances paid by the Defendant in excess of the payments made
by the borrower to the escrow account.  The notices specifying
the post-petition increases in payments are sent to the debtor
borrower and the chapter 13 trustee.

The Debtor alleges that as a result of receiving a notice of
a post-petition payment increase, the chapter 13 trustee takes
action which results in the collection by the trustee of the
increased payment as specified in the lender's notice, which
action includes objections to confirmation or motions to dismiss
if the debtor is not proposing to pay the full amount of the
increased payment.  The Debtor alleges that in generating and
sending the notices based on post-petition escrow analyses as
described above, the "Defendants" fail to distinguish between
pre- and post-petition escrow advances and improperly collect on
a claim for a pre-petition debt through the ongoing monthly
mortgage payment.  The Debtor alleges that this practice violates
the automatic stay of 11 U.S.C. § 362(a).

In this case, the Debtor alleges that such a notice was
generated by the "Defendants" on or about October 29, 2009, which
notice was sent to the Debtor, the Debtor's counsel, and the
chapter 13 trustee, informing those parties that the correct
post-petition payment for the loan was $3,119.91.  FAC, ¶ 39 &
40.

-5-

The Debtor also alleges that the Defendants' violated RESPA by (1) failing to notify the Debtor when the note and deed of trust were assigned, sold, or transferred; (2) assessing more "risk" in the Defendants' escrow analysis calculations than is allowed by RESPA; (3) improperly accessing the escrow account for payment of property taxes and insurance; (4) failing to credit back charges improperly force-placing insurance when the Debtors had paid for insurance themselves; and (5) performing an improper escrow analysis that resulted in incorrect notices of increase in payments.  The Debtor specifically cites 12 U.S.C. § 2604 as the basis for their claims for RESPA violations.

Finally, the Debtor alleges that the "Defendants," were engaged in a civil conspiracy for the purpose of "recouping pre-petition claims from post-petition estate property resulting in systematic injury to [debtor]" by means of the allegedly improper escrow analyses described above, concealing the post-petition collection of pre-petition claims, and objecting to confirmation of chapter 13 plans based on the improper escrow analyses.

In addition to the facts alleged by the Debtor in the FAC summarized above, the court takes judicial notice of the Escrow Account Disclosure Statement dated November 29, 2009 (the "Statement")(Dkt. 70 at 2) and the Deed of Trust dated September 14, 2006 (Dkt. 68 at 2), copies of which were submitted by the Moving Defendants with this motion.  In the Ninth Circuit, a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the

-6-

document and its authenticity is unquestioned.  <u>Parrino v. FHP,</u>
<u>Inc.</u>, 146 F.3d 699, 706 (9th Cir.1998), <u>superseded by statute on</u>
<u>other grounds as stated in</u> <u>Abrego v. Dow Chem. Co.</u>, 443 F.3d 676
(9th Cir.2006); <u>see also</u> <u>Lee v. City of Los Angeles</u>, 250 F.3d
668, 688 (9th Cir.2001).  In this case, both the Statement and
the Deed of Trust are referenced in the FAC but are not
explicitly incorporated therein.  The Debtor does not question
the authenticity of either document.

Having taken judicial notice of the Deed of Trust, the court
notes, contrary to the Debtor's allegations in the FAC, that the
Deed of Trust does provide as part of its uniform covenants that
the Debtor shall pay the lender periodic payments of amounts due
for taxes, assessements, items that can attain priority over the
Deed of Trust as a lien or encumbrance on the Property, and
insurance premiums.  Deed of Trust, Dkt. 68 at 5.

## ANALYSIS

<u>The Law Applicable to A Motion For Judgment on the Pleadings</u>

A judgment on the pleadings under Rule 12(c) "is properly
granted when, taking all the allegations in the pleadings as
true, the moving party is entitled to judgment as a matter of
law."  <u>Nelson v. City of Irvine</u>, 143 F.3d 1196, 1200 (9th Cir.
1998).  Although the caption of this motion indicates that it is
a motion for a judgment on the pleadings pursuant to Rule 12(c),
the motion and the prayer contained in the supporting memorandum
of points and authorities requests dismissal of the FAC without

-7-

leave to amend.   However, pursuant to Fed. R. Civ. P. 12(h)(2),
a motion made pursuant to Rule 12(c) may be used to raise a
defense under Fed. R. Civ. P. 12(b)(6) that a complaint fails to
state a claim upon which relief may be granted.   In this case,
the Defendants raised a defense under Rule 12(b)(6) as their
first affirmative defense in their answer to the FAC filed on
July 15, 2010 (Dkt. 92 at 17).

The following sets forth the legal standard for dismissal of
a complaint where the complaint fails to state a claim on which
relief may be granted:

> The purpose of a motion to dismiss under Rule 12(b)(6) of
> the Federal Rules of Civil Procedure, made applicable here
> under Fed. R. Bankr. P. 7012, is to test the legal
> sufficiency of a plaintiff's claims for relief.   In
> determining whether a plaintiff has advanced potentially
> viable claims, the complaint is to be construed in a light
> most favorable to the plaintiff and its allegations taken as
> true.   Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40
> L.Ed.2d 90 (1974);   Church of Scientology of Cal. v. Flynn,
> 744 F.2d 694, 696 (9th Cir.1984). . .

Quad-Cities Constr., Inc. v. Advanta Bus. Servs. Corp. (In re
Quad-Cities Constr., Inc.), 254 B.R. 459, 465 (Bankr. D. Idaho
2000).

In addition, under the Supreme Court's most recent

-8-

formulation of Rule 12(b)(6), a plaintiff cannot "plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." Ashcroft v. Iqbal,129 S .Ct 1937, 1954 (2009). Instead, a complaint must set forth enough factual matter to establish plausible grounds for the relief sought. See Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964-66 (2007). ("[A] plaintiff's obligation to provide 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Factual allegations must be enough to raise a right to relief above the speculative level. Id., citing to 5 C. Wright & A. Miller, Fed. Practice and Procedure § 1216, at 235-36 (3d ed. 2004) ("[T]he pleading must contain something more. . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").

In addition, the court notes the following:

A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001); Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1988). . . the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

unreasonable inferences." <u>Sprewell v. Golden State</u>
<u>Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001). Courts
will not "assume the truth of legal conclusions merely
because they are cast in the form of factual
allegations." <u>Warren v. Fox Family Worldwide, Inc.</u>, 328
F.3d 1136, 1139 (9th Cir. 2003); <u>accord</u> <u>W. Mining</u>
<u>Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).
Furthermore, courts will not assume that plaintiffs
"can prove facts which [they have] not alleged, or that
the defendants have violated . . . laws in ways that
have not been alleged." <u>Assoc. Gen. Contractors of</u>
<u>Cal., Inc. v. Cal. State Council of Carpenters</u>, 459
U.S. 519, 526; 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983).

. .

<u>Toscano v. Ameriquest Mortg. Co.</u>, 2007 U.S. Dist. LEXIS 81884
(E.D. Cal. 2007).

A motion for judgment on the pleadings under Rule 12(c) is
"essentially equivalent to a Rule 12(b)(6) motion to dismiss, so
a district court may 'dispose of the motion by dismissal rather
than judgment.'" <u>Technology Licensing Corp. v. Technicolor USA,</u>
<u>Inc.</u>, 2010 WL 4070208 (E.D. Cal. Oct. 18, 2010)(quoting <u>Sprint</u>
<u>Telephony PCS, L.P. v. County of San Diego</u>, 311 F.Supp.2d 898,
902-03 (S.D.Cal.2004)).

If a Fed. R. Civ. P. 12(b)(6) motion to dismiss is granted,
"[the] court should grant leave to amend even if no request to

1  amend the pleading was made, unless it determines that the

2  pleading could not possibly be cured by the allegation of other

3  facts." <u>Lopez v. Smith</u>, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

4  banc), quoting <u>Doe v. United States</u>, 58 F.3d 494, 497 (9th Cir.

5  1995). In other words, the court is not required to grant leave

6  to amend when an amendment would be futile. <u>See</u> <u>Toscano</u>, 2007

7  U.S. Dist. LEXIS 81884 (<u>citing</u> <u>Gompper v. VISX, Inc.</u>, 298 F.3d

8  893, 898 (9th Cir. 2002)).  Similarly, a court may also grant

9  leave to amend in response to a Rule 12(c) motion "if the

10  pleadings can be cured by further factual enhancement."

11  <u>Technology Licensing Corp.</u>, 2010 WL 4070208 at *3.

12

13                  <u>Dismissal of Non-OneWest Bank</u>

14               <u>Moving Defendants Without Leave to Amend</u>

15       Before turning to an analysis of each of the enumerated

16  claims for relief set forth in the FAC, the court first addresses

17  the inclusion of named defendants IMB HoldCo, IMB Management,

18  OneWest Group and OneWest Venture (collectively, the "Non-OneWest

19  Bank Defendants") in the FAC, which parties were not named as

20  defendants in the initial complaint filed on January 26, 2010.

21  The FAC identifies the Non-OneWest Bank Defendants and alleges

22  that each of the Non-OneWest Bank Defendants held an interest in

23  the loan at some time or provided loan servicing, but does not

24  contain any specific allegations relating to conduct of the Non-

25  OneWest Bank Defendants with respect to the Bankruptcy Case.

26  Instead, the allegations in the FAC only allege that OneWest Bank

27

28                              -11-

filed a proof of claim in the bankruptcy case and sent notices to the Debtor regarding the amount of her monthly mortgage payment.

To the extent that any conduct of the Non-OneWest Bank Defendants is alleged in the FAC at all, the Non-OneWest Bank Defendants are only vaguely and ambiguously identified with the label "Defendants," "Defendant" or "defendant."  In light of the allegations in the FAC and those matters of which this court has taken judicial notice which indicates OneWest Bank is the only named defendants which has actively sought to enforce the Claim in this case, the Debtor's vague allegations are insufficient to state any plausible claim for relief as against the Non-OneWest Bank Defendants.

Dismissal of Third Claim for Relief (Violation of 11 U.S.C. §
362(k)(1)) Without Leave to Amend

The Defendants' request for judgment on the pleadings with respect to the third claim for relief is denied, and the claim is dismissed without leave to amend as to all named defendants, but without prejudice to the inclusion of a claim for violation of the automatic stay in an amended complaint, as discussed, *infra*, in connection with the second claim for relief.

The third claim for relief alleges a violation of 11 U.S.C. § 362(k)(1).  Section 362(k)(1), however, does not create a right of action but governs the available remedies and measure of damages for a violation of a stay provided by § 362.  As a result, because the Debtor cannot state a claim for a violation

-12-

of § 362(k)(1), the claim is dismissed without leave to amend.

### Dismissal of OneWest Bank With Leave to Amend

Having addressed the Debtor's allegations with respect to the Non-OneWest Bank Defendants, the court now addresses each of the Debtor's first, second, fourth and fifth claims for relief with respect to OneWest Bank.


*1. First Claim for Relief: (Declaratory Relief)*

This claim for relief is dismissed as to OneWest Bank with leave to amend.

The facts alleged by the Debtor establishes the existence of a dispute between the Debtor and some, if not all, of the named defendants regarding the correct amount of the ongoing monthly payments to be made by the Debtor under her note and deed of trust obligations, the correct method by which the escrow analysis should be prepared, and the proper amount of the pre-petition claim based on the note and deed of trust obligation.

The first claim for relief fails, however, to distinguish adequately among the named defendants with respect to the aforementioned disputes.  The Debtor has not alleged facts supporting a need for declaratory relief between herself and all of the named defendants, and, as a result, the defendants have not been given fair notice of the claims being alleged against each of them.  See Erickson v. Pardus, 551 U.S. 89, 93 (2007)(under Fed. R. Civ. P. 8, the plaintiff need only provide a

-13-

short and plain statement of the claim for relief, but must also give the defendant fair notice of the claims being alleged against it).  The Debtor's allegations that a controversy exists between herself and "Defendants" is insufficient.  It appears, based on the Debtor's general allegations, that her claim for declaratory relief is relevant only to the Debtor and OneWest Bank, the only entity alleged to have taken an active role in enforcing the Claim in ths bankruptcy case.  However, the Debtor is given leave to amend to clarify the exact nature of the dispute between themselves and each of the remaining named defendants, to the extent such a dispute exists.

   2.  *Second Claim for Relief (Violation of 11 U.S.C. § 362(a))*

        This claim for relief is dismissed as to OneWest Bank with leave to amend.

        The Moving Defendants argue that the facts alleged by the Debtor do not constitute a violation of the automatic stay of 11 U.S.C. § 362(a).  The Moving Defendants argue that because the Debtor did not allege that the notices sent by the Moving Defendants to the Debtor and the chapter 13 trustee were accompanied by a payment envelope, or that the notices were threatening or coercive, that no claim for violation of the automatic stay has been alleged.

        The Moving Defendants rely heavily on the recent decision of the Ninth Circuit Bankruptcy Appellate Panel in In re Zotow, 432 B.R. 252 (9th Cir. BAP 2010).  The facts underlying Zotow are

-14-

similar to those alleged in the instant adversary proceeding.
The Zotows were debtors in chapter 13 who objected to a proof of
claim filed by BAC Home Loans Servicing, LP ("BAC").  The Zotows
objected to BAC's claim on the ground that the Zotows' pre-
petition escrow account shortages should have been listed in the
proof of claim.  Rather than include the shortage in the proof of
claim, BAC had instead performed an escrow analysis and had sent
the debtors and the chapter 13 trustee a post-petition notice
which indicated an increase in their ongoing monthly installment
payment into the escrow account due to the pre-petition shortage.
The notice stated that it was being furnished for informational
purposes only and should not be construed as an attempt to
collect against the debtors personally.  The notice also stated
that if the debtors were involved in a chapter 13 proceeding the
debtors were required to obey all orders of the court in the
event that the amount specified in the notice conflicted with any
order or requirement of the court.  Based on the notice, the
chapter 13 trustee made several ongoing post-petition installment
payments to BAC from the debtors' plan payments based on the
amount of the payments as specified in the notice.  The chapter
13 trustee also objected to confirmation of the debtors' chapter
13 plan on the ground that the debtors' proposed plan payment was
insufficient to fully fund the plan based on the increased
payment amount set forth in the notice sent by BAC.

The debtors argued that BAC's attempt to collect the escrow
shortage, a pre-petition debt, by increasing the ongoing post-

petition installment payment through the chapter 13 plan rather
than including the escrow shortage in the proof of claim
constituted a violation of the automatic stay.  Following an
evidentiary hearing the bankruptcy court concluded that BAC
should have included the pre-petition escrow shortage in its
proof of claim, but also found that BAC had not violated the
automatic stay.

The BAP affirmed the bankruptcy court's conclusion that BAC
had not violated the automatic stay.  As the BAP stated:

> [T]he automatic stay does not prevent all communications
> between a creditor and the debtor. Morgan Guar. Trust Co. of
> N.Y. v. Am. Sav. and Loan Ass'n, 804 F.2d 1487, 1491 (9th
> Cir.1986); Connor v. Countrywide Bank, N.A. (In re Connor),
> 366 B.R. 133, 136 (Bankr.D.Hawaii 2007). Whether a
> communication is a permissible or prohibited one is a
> fact-driven inquiry which makes any bright line test
> unworkable. See Henry v. Assocs. Home Equity Servs., Inc.,
> 272 B.R. 266, 278 (C.D.Cal.2002) (whether creditor's
> activities involved coercion or harassment is fact-specific
> inquiry); Cousins v. CitiFinancial Mortgage Co. (In re
> Cousins), 404 B.R. 281, 287 (Bankr.S.D.Ohio 2009) (noting
> that determining whether a violation of the automatic stay
> occurs can be complicated).

Zotow, 432 B.R. at 258.

-16-

1    The BAP went on to identify prohibited communications as

2  "those where direct or circumstantial evidence shows the

3  creditors actions were geared toward collection of a pre-petition

4  debt, were accompanied by coercion or harassment, or otherwise

5  put pressure on the debtor to pay. . . . [M]ere requests for

6  payment and statements simply providing information to a debtor

7  are permissible communications that do no run afoul of the stay."

8  Id.  "In the end, one distinguishing factor between permissible

9  and prohibited communications is evidence indicating harassment

10 or coercion.  When such evidence is present, a disclaimer on the

11 communication that it was being sent 'for informational purposes

12 only' is ineffective."  Id. at 259.  The BAP identified three

13 significant facts in Zotow that informed its conclusion that the

14 post-petition notice sent by BAC did not violate the automatic

15 stay: (1) the notice was not in the nature of an invoice and

16 merely set forth the fact of the debt; (2) BAC did not send the

17 notice with a payment coupon or envelope and without any

18 informational component; and (3) BAC sent only one notice to the

19 debtors, and the information contained in that notice was

20 information that the debtors would need to propose a feasible

21 chapter 13 plan.  Id. at 259-60.  The Zotow court also found that

22 BAC did not violate the automatic stay by receiving increased

23 post-petition payments from the chapter 13 trustee.

24    In the instant case, the copy of the Escrow Account

25 Disclosure Statement dated October 29, 2009 submitted by the

26 Moving Defendants states in two places that it is not being used

27

28                              -17-

to collect a debt, but is for informational purposes only.  It
also states that IndyMac Mortgage Services, a division of OneWest
Bank, which sent the statement to the Debtor, calculated an
anticipated escrow shortage amount of $11,985.76 by the end of
October, 2009.  As in Zotow, the Statement is not in the nature
of an invoice.  The Statement also states that it is for
informational purposes only, though it does state that the Debtor
was "required" to have a certain balance in her escrow account by
the end of October, 2009.

The question, then, is whether the Debtor's allegation that
notices regarding changes in her payment is sufficient to elevate
the alleged actions of one or more of the Moving Defendants to a
violation of the automatic stay.  The court concludes that the
allegations contained in the FAC are not sufficient.  The court
does not reach this conclusion because the sending of a notice
regarding post-petition payment increases can never be a
violation of the automatic stay; the court does not foreclose the
possibility that a creditor's sending of a notice to a debtor,
whether informational or not, may rise to the level of coercion
or harassment.  As the Zotow court pointed out, whether
communications are prohibited or permitted or whether they rise
to the level of coercion or harassment are fact-driven inquiries
for which there are no bright-line rules.

Instead, the court concludes that the allegations in the FAC
and under the second claim for relief are not sufficient to state
a claim upon which relief may be granted because, as with the

-18-

first claim for relief, they do not give each of the Moving
Defendants and the other named defendants fair notice of the
claims being alleged against them.  As with the first claim for
relief, the general allegations in the FAC and in the second
claim for relief are replete with vague references to
"Defendants," "defendants" and "Defendant," with no apparent
effort made to distinguish between each of the eleven defendants
named in the caption of the FAC.

In addition, other than the sending of a notice regarding a
payment increase, the FAC is devoid of other allegations which,
construed in the light most favorable to the Debtor, would show
coercive or harassing behavior on the part of any of the Moving
Defendants.  As a result, the second claim for relief is
dismissed with leave given to the Debtor to amend the FAC to
specify which of the named defendants committed acts which
allegedly violated the automatic stay and, to the extent that
they exist, to allege additional facts regarding the sending of
the Notice or other acts committed in violation of the automatic
stay.

3.    *Fourth Claim for Relief (Violation of Real Estate Settlement*
*Practices Act (RESPA))*

This claim is dismissed as to OneWest Bank with leave to
amend.

The fourth claim for relief alleges that the "Defendants"
violated RESPA by (1) failing to notify the Debtor when the note

-19-

and deed of trust were assigned, sold, or transferred; (2) assessing more "risk" in the "Defendants'" escrow analysis calculations than is allowed by RESPA; (3) improperly accessing the escrow account for payment of property taxes and insurance; (4) failing to credit back charges for improperly force-placing insurance; and (5) performing an improper escrow analysis that resulted in incorrect notices of increase in payments.  However, the Debtor cites only 12 U.S.C. § 2604 in connection with the claim.  Section 2604, however, governs the form and distribution of special information booklets regarding the nature and costs of real estate settlement services.

In their written opposition, the Debtor has identified other sections of RESPA that she asserts were violated by the Moving Defendants.  These sections, however, are not identified in the FAC.  In the context of a motion for a more definite statement under Fed. R. Civ. P. 12(e), the Ninth Circuit has stated, "even though a complaint is not defective for failure to designate the statute or other provision of law violated, the judge may in his discretion . . . require such detail as may be appropriate in the particular case."  McHenry v. Renne, 84 F.3d 1172, 1179 (9th Cir. 1996).  Although the Moving Defendants have filed a motion for judgment on the pleadings rather than for a more definite statement, the court finds that McHenry v. Renne is applicable here, insofar as a motion for a more definite statement and a motion for judgment on the pleadings are both concerned with the sufficiency of the plaintiff's pleading.  In this case, the court

-20-

dismisses the fourth claim for relief with leave to amend as to
the specific provisions of RESPA that the Debtor asserts were
violated by one or more of the named defendants because RESPA is
a complex statute that covers several sections of Chapter 27 of
the United States Code.  Requiring the Debtor to specify the
specific provisions that they believe were violated prevents both
the Moving Defendants and the court from guessing which
provisions of RESPA the Debtor believed the Moving Defendants
violated and gives fair notice to all parties and the court of
the claims being asserted.

The fourth claim for relief is also dismissed with leave to
amend because, like the first and second claims for relief, it is
replete with vague references to "Defendants" and "defendants"
without any distinction between the eleven named defendants in
the caption of the FAC.  The allegations underlying the fourth
claim for relief do not give the remaining defendants fair notice
of the claims asserted against them.  As a result, the
fourth claim for relief is dismissed with leave given to the
Debtor to amend the claim to specify which of the remaining named
defendants violated RESPA and the specific manner in which they
violated RESPA.

### 4.   *Fifth Claim for Relief (Civil Conspiracy)*

This claim is dismissed as to OneWest Bank with leave to
amend.

Civil conspiracy is not an independent tort.  Instead it is

-21-

"merely a mechanism for imposing vicarious liability; it is not itself a substantive basis for liability.  Each member of the conspiracy becomes liable for all acts done by other pursuant to the conspiracy, and for all damages caused thereby." <u>Favila v. Katten Muchin Rosenman LLP</u>, 188 Cal.App.4th 189, 206 (2010).  A civil conspiracy is "activated by the commission of an actual tort." <u>Applied Equip. Corp. v. Litton Saudi Arabia Ltd.</u>, 7 Cal.4th 503, 511 (1994).

In addition, "[t]he basis of a civil conspiracy is the formation of a group of two or more persons who have agreed to a common plan or design to commit a tortious act.  The conspiring defendants must also have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose.  However, actual knowledge of the planned tort, without more, is insufficient to serve as the basis for a conspiracy claim.  Knowledge of the planned tort must be combined with intent to aid its commission." <u>Id.</u> (citing <u>Kidron v. Movie Acquisition Corp.</u>, 40 Cal.App.4th 1571, 1582 (1995).

Here, the Debtor alleges that "Defendants" engaged in a conspiracy for the purpose of "recouping pre-petition claims from post-petition estate property resulting in systematic injury to debtor" by means the allegedly improper escrow analyses described above, concealing the post-petition collection of pre-petition claims, and objecting to confirmation of chapter 13 plans based on the improper escrow analyses.  These allegations, however, are not sufficient to state a claim that any of the named defendants

-22-

were involved in a civil conspiracy.  The Debtor has not alleged
any agreement between any of the named defendants to a common
plan or design to commit a tortious act, nor have they alleged
that any of the named defendants had actual knowledge that a tort
was planned and that they concurred in the tortious scheme with
knowledge of its unlawful purpose.  This claim for relief also
suffers from the same defects as the first, second and fourth
claims for relief in that it also fails to distinguish between
any of the named defendants with respect to the alleged civil
conspiracy.  For these reasons, the court dismisses the fifth
claim for relief as to OneWest Bank with leave to amend.

Rather than issue judgment in favor of OneWest Bank, the
court dismisses the first, second, fourth and fifth claims for
relief in the FAC with leave to amend as to OneWest Bank because
the court finds that it is possible that the deficiencies
identified in the FAC may be cured with further factual
enhancement.  The court cautions the Debtor that the second
amended complaint must clearly identify which of the remaining
named defendants violated their legal rights and the specific
manner in which they violated those rights; if the Debtor fails
to do so those defendants who are not clearly connected with the
acts complained of will be dismissed without leave to amend.

The court will issue a separate order consistent with this
ruling.

Dated: JUL 1 4 2011

_Thomas C. Holman_
UNITED STATES BANKRUPTCY JUDGE

-23-

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA

### CERTIFICATE OF SERVICE

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was served by mail to the following entities listed at the address(es) shown below.

Office of the US Trustee
501 I St, Ste 7-500
Sacramento, CA 95814

Christopher Giaimo
1050 Connecticut Ave NW #1100
Washington, DC 20036

Joshua del Castillo
515 S Figueroa St 9th Fl
Los Angeles, CA 90071

Kevin Hahn
2112 Business Center Dr 2nd Fl
Irvine, CA 92612

Nicolas Daluiso
710 2nd Ave #710
Seattle, WA 98104

Peter Macaluso
7311 Greenhaven Dr #100
Sacramento, CA 95831

DATED: 7./5·/1

By: _____
**Deputy Clerk**